# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 9, 2004 Session

## ALEXANDER C. WELLS v. TENNESSEE BOARD OF REGENTS, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 95-2144-II      Carol L. McCoy, Chancellor**

---

### No. M2003-00591-COA-R3-CV - Filed January 16, 2004

---

This appeal is the continuation of a protracted dispute between Tennessee State University and a faculty member stemming from his termination for sexually harassing a student. After the courts vacated the dismissal, the university and the Tennessee Board of Regents established a process of transitional reinstatement. The professor objected and refused to report to work. Thereafter, the professor filed a petition in the Chancery Court for Davdison County to hold the university and the board in contempt. The trial court heard the matter without a jury and declined to hold either the university or the board in contempt. The professor has appealed. We affirm because orders declining to grant contempt petitions are not appealable.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Alexander C. Wells.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Kae Carpenter Todd, Assistant Attorney General, for the appellees, Tennessee Board of Regents, Tennessee State University, and James Hefner.

### MEMORANDUM OPINION[1]

### I.

Alexander C. Wells was a tenured faculty member at Tennessee State University ("TSU") in 1990. In the fall of 1990, one of his former students accused him of rape. Following an investigation, TSU concluded that Dr. Wells had violated its sexual harassment policy and eventually

---

[1] Tenn. Ct. App. R. 10 provides:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

terminated his employment. Dr. Wells sought judicial review of his dismissal, and in August 1998, the Chancery Court for Davidson County reversed TSU's decision and remanded the matter to the Tennessee Board of Regents for further action. TSU and the Board appealed the ruling to the Tennessee Supreme Court.[2]

On November 11, 1998, while TSU's and the Board's appeal was pending, Dr. Wells's lawyer demanded in writing that his client be reinstated immediately "to the position he occupied prior to his termination with full teaching duties and benefits reinstated as well." The general counsel for the Board responded that the Fall 1998 semester was nearing completion and that TSU would develop "an assignment for Dr. Wells'[s] return beginning with the Spring 1999 semester in January." On December 7, 1998, Dr. Wells's lawyer pointedly threatened to commence contempt proceedings unless Dr. Wells was "placed back into a teaching position with substantially the same laboratory and office accommodations he enjoyed prior to the commencement of the wrongful termination instituted against him."

On December 22, 1998, the Board's general counsel provided Dr. Wells's lawyer with Dr. Wells's class schedule for the Spring 1999 semester. The letter pointed out that classes were scheduled to begin on January 11, 1999, and instructed Dr. Wells to report to his department head on January 6, 1999. This schedule required Dr. Wells to teach three evening classes at TSU's downtown campus. Because Dr. Wells had been out of the classroom for approximately nine years, the schedule for the Spring 1999 semester envisioned that he would use the remaining time "to help with the transition to returning to teaching, planning research projects, and designing public service projects in the sciences."[3] The plan also anticipated that the university would assign Dr. Wells a "full faculty teaching load" in future semesters.

On December 28, 1999, Dr. Wells's lawyer informed the Board's general counsel that the assignments for the Spring 1999 semester were not acceptable and that Dr. Wells expected "to be reinstated in the position where he occupied prior to October, 1990." The general counsel replied on January 4, 1999, that Dr. Wells had "no contractual, statutory, or constitutional right to pick his own class schedule or office location" and that the Board's policy provided that "a faculty member relinquishes tenure upon failure to report for service at the designated date of the beginning of any academic term." After Dr. Wells did not report to his department head on January 6, 1999 as instructed, the Board's general counsel requested his lawyer to inform her immediately whether Dr. Wells intended to teach his assigned classes.

Dr. Wells did not agree to teach his assigned classes. Rather, his lawyer informed the Board's general counsel on January 11, 1999 that "we have no alternative but to consider your actions a constructive discharge against Dr. Wells in retaliation for his victory against the University in Chancery Court." The Board's general counsel responded that the Board considered Dr. Wells to have resigned and, therefore, that it would reassign his classes to other professors.

---

[2]The Tennessee Supreme Court affirmed the chancery court's reversal of TSU's termination in December 1999. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779 (Tenn. 1999).

[3]Prior to his dismissal, Dr. Wells had taught seven cases at TSU's main campus. As of the Spring 1999 semester, TSU no longer offered three of these classes, one was not offered during the Spring 1999 semester, one had been assigned to another professor, and one could only be taught by professors with research projects in place.

Over three years later, on August 12, 2002, Dr. Wells filed a complaint in the Chancery Court for Davidson County against TSU, the Board, and TSU's president, seeking a declaratory judgment and "enforcement of the previous orders of the court." He requested the court to "issue an order declaring that the Respondent failed to obey the order of this Court and reinstate Wells to the position and work circumstances he had prior to termination." In response to a motion to dismiss, Dr. Wells insisted that the court "should allow the plaintiff to amend his complaint to allege contempt on the part of the defendant." Dr. Wells also filed a petition seeking to hold TSU, the Board, and TSU's president in civil contempt. The trial court eventually permitted Dr. Wells to amend his petition to allege contempt and dismissed all other causes of action in the petition. Following a hearing, the trial court filed an order on February 20, 2003 dismissing Dr. Wells's petition for contempt. Dr. Wells filed a timely notice of appeal.

## II.

Dr. Wells raises only one issue on this appeal - "whether the trial court erred in determining the State was not in contempt of the court's order dated August 17, 1998."[4] The trial court's decision to dismiss Dr. Wells's contempt petition is not one we can review on appeal. It has long been the law in Tennessee that parties do not have a right to appeal from an acquittal in either a criminal or a civil contempt proceeding. *Collier v. City of* Memphis, 160 Tenn. 500, 502, 26 S.W.2d 152, 153 (1930); *Gunter v. Seaboard Copper Mining Co.*, 142 Tenn. 14, 18, 215 S.W. 273, 273 (1919); *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995); *Brewer v. Brewer*, 869 S.W.2d 928, 929 (Tenn. Ct. App. 1993); *Zwick v. Jones*, 589 S.W.2d 664, 666 (Tenn. Ct. App. 1979); *Plumb v. Plumb*, 52 Tenn. App. 267, 274, 372 S.W.2d 771, 774 (1962); *Schwalb v. Schwalb*, 39 Tenn. App. 306, 312, 282 S.W.2d 661, 664 (1955).

## III.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. The costs of this appeal are taxed to Alexander C. Wells and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[4]Dr. Wells has not taken issue with the dismissal of the other claims in his original petition filed on August 12, 2002.

-3-